UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| CHRISTOPHER J. LASTRA,<br><br>Plaintiff,<br><br>v.<br><br>SELECT PORTFOLIO SERVICING, INC.,<br><br>Defendant. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 1:23-CV-22014-KMW-MJS<br><br>**MEMORANDUM OPINION** |

**Christopher Lastra**

*Plaintiff, pro se*

**Nicholas M. Gaunce, Esq.**
Eckert Seamans
Princeton Pike Corporate Center
2000 Lenox Drive, Suite 203
Lawrenceville, NJ 08648

*Counsel for Defendant Select Portfolio Servicing, Inc.*

**I.   INTRODUCTION**

This matter comes before the Court by way of the Motion of defendant Select Portfolio Servicing, Inc. ("Defendant") to dismiss the Amended Complaint of *pro se* plaintiff Christopher Lastra ("Plaintiff"), pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has opposed Defendant's Motion. For the reasons set forth below, Defendant's Motion is granted.

1

## II. BACKGROUND

### A. Factual Background[1]

On January 26, 2007, Plaintiff obtained a mortgage loan from IndyMac Bank, F.S.B. ("IndyMac"), in the sum of $240,000.00. (ECF No. 21-16.) In exchange for the loan, Plaintiff executed a promissory note to the benefit of IndyMac, which was secured by a mortgage on Plaintiff's home in Woodbury Heights, New Jersey. (ECF Nos. 21-3, 21-16.) In the ensuing years, Plaintiff's mortgage was assigned and reassigned to various entities.[2] The mortgage was last assigned on October 15, 2020, to Towd Point Mortgage Trust 2019-4, with U.S. Bank National Association ("USBNA") serving as its indentured trustee (together, "Towd Point"). (ECF No. 22.) The assignment was recorded with the Gloucester County Clerk's Office ("GCCO") on January 25, 2024. (*Id.*)

Defendant began servicing Plaintiff's loan on October 31, 2019. (ECF No. 21-12.) However, approximately four years later, it appears that Plaintiff stopped making payments on his loan. Consequently, Defendant sent Plaintiff a notice of intent to foreclose ("NOI"), dated October 23, 2023. (ECF No. 21-2.) The NOI advised Plaintiff that he was in default; identified Towd Point as the current lender and holder of the promissory note; and indicated that Defendant had "been instructed on behalf of [Towd Point] to pursue remedies . . . unless [he] [took] action to cure the default" by a certain date. (*Id.*) In addition, the NOI itemized the total amount past due; provided Defendant's mailing address for the submission of any payment to cure the default; delineated Plaintiff's rights as a homeowner; and set out avenues for repayment assistance. (*Id.*)

---

[1] In reciting the foregoing facts, the Court relies on the allegations in Plaintiff's Amended Complaint, as well as the documents attached thereto.

[2] All assignments have been recorded with the GCCO and are attached to the Amended Complaint. (ECF Nos. 21-4, 21-9, 21-13, 21-14, 21-15, 22.)

On November 6, 2023, Plaintiff initiated the instant action in which he seeks to preemptively contest Defendant's legal authority to foreclose on the property or otherwise enforce the terms of his debt obligation. He does so specifically by collaterally challenging the rights of its non-party client, Town Point, claiming that it is not the "real" holder of his promissory note or the "true" assignee of his mortgage. Plaintiff also alleges that the 2020 assignment of his mortgage to Towd Point is invalid either because it was not properly recorded or, alternatively, because the assignment is somehow fraudulent. Lastly, he insists that Towd Point's authority can only be demonstrated by examining a pooling service agreement ("PSA") or master loan schedule ("MSL") governing the trust that supposedly holds his note.

Based on the foregoing, Plaintiff asserts various causes of action for fraud and negligence under New Jersey state law, as well as violations of the Fair Debt Collection Practices Act ("FDCPA"). He accordingly demands, among other relief, a judgment declaring that Defendant does not have the authority to foreclose on the property, as well as recission of his promissory note.

### B. Procedural History

Plaintiff filed his initial Complaint on November 6, 2023. (ECF No. 1.) Thereafter, Defendant answered the Complaint, and subsequently moved for judgment on the pleadings on March 27, 2024. (ECF Nos. 8, 18.) Thereafter, on May 10, 2024, Plaintiff filed an application for the issuance of an order to show cause for temporary restraints, seeking to prevent Defendant from filing any dispositive motions before discovery could take place. (ECF No. 19.) The Court denied Plaintiff's application, but granted his alternative request for leave to file an amended pleading; Defendant's pending motion was accordingly denied as moot. (ECF No. 20.)

Plaintiff filed an Amended Complaint on April 30, 2024. (ECF No. 21.) Thereafter, Defendant filed the instant Motion to Dismiss for failure to state a claim, which led Plaintiff to file another application for temporary restraints on identical grounds. (ECF No. 30.) The Court denied Plaintiff's second application, but afforded him additional time to oppose Defendant's Motion. (ECF No. 32, 36.) Plaintiff filed his Opposition on July 5, 2024, to which Defendant replied thereafter. (ECF Nos. 37, 38.)

### III. LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court is required to accept as true all factual allegations in the complaint and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff, *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), but need not accept as true legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). A complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and a complaint will not "suffice" if it provides only "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Complaints subject to dismissal under Rule 12(b)(6) are generally analyzed under the pleading standard set forth in Rule 8(a), which demands that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). A complaint that provides facts "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive review under Rule 12(b)(6). *Id.* (quoting *Twombly*, 555 U.S. at 557). Where, like here, a plaintiff proceeds *pro se*, her pleading is liberally construed and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Even so, *pro se* litigants must still "allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).

To the extent a complaint asserts claims sounding in fraud, those claims are subject to the heightened pleading standard imposed by Federal Rule of Civil Procedure 9(b). *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). The purpose of the particularity requirement is to place the defendant on notice of the "precise misconduct with which [it is] charged." *Lum v. Bank of America*, 361 F.3d 217, 223–224 (3d Cir. 2004). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Though, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "*Pro se* plaintiffs are also not exempt from meeting the heightened pleading requirements of Rule 9(b) when alleging claims that sound in fraud." *Kaul v. Christie*, 372 F. Supp. 3d 206, 229 (D.N.J. 2019).

IV.   **DISCUSSION**

In its Motion, Defendant submits that Amended Complaint must be dismissed because Plaintiff lacks standing to challenge the 2020 assignment to Towd Point, as well as any documents governing the trust possessing his promissory note. The Court agrees.

A.   **Standing**

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Miller v. Nissan Motor Acceptance Corp.*, 362 F.3d 209, 221 (3d Cir. 2004) (quotation marks omitted). Standing "consist[s] of two related components: the constitutional requirements of Article III and nonconstitutional prudential considerations." *Franchise Tax Bd. of California v. Alcan Aluminium Ltd.*, 493 U.S. 331, 335 (1990). To have constitutional standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, (2016); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). Prudential standing encompasses, among other precepts, "the general prohibition on a litigant's raising another person's legal rights." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004) (quotation marks omitted).

First, the Court holds that Plaintiff does not have standing to challenge the validity of the 2020 assignment of his mortgage to Towd Point. Courts in this jurisdiction have repeatedly found mortgagors do not have standing to challenge the assignment of their mortgages because they are not parties to or third-party beneficiaries of the assignment." *English v. Fed. Nat'l Mortg. Ass'n*, No. 13-2028, 2017 WL 1084515, at *3 (D.N.J. Mar. 21, 2017); *see also Bauer v. Mortg. Elec. Registration Sys., Inc.*, 618 F. App'x 147, 149 (3d Cir. 2015) (holding that plaintiff lacked standing to bring suit challenging assignment to mortgagee); *Davis v. Fein Such Kahn & Shepard PC*, No.

CV 18-8560, 2019 WL 1789471, at *8 (D.N.J. Apr. 24, 2019); *Eun Ju Song v. Bank of Am., N.A.*, No. 14-3204, 2015 WL 248436, at *2 (D.N.J. Jan. 20, 2015).

In addition, the Court also finds that Plaintiff does not have standing to bring his claims insofar as he alleges that the assignment of his mortgage was somehow inconsistent with some PSA or MLS. Even assuming that these documents have any bearing on Defendant's ability to enforce Plaintiff's debt obligations, this circuit stands with the "overwhelming majority of courts" in holding that "a borrower in default has no standing to challenge an assignment" based on "alleged non-compliance with the documents governing [a] trust." *Gilarmo v. U.S. Bank NA ex rel. CSAB Mortg. Backed Tr. 2006-1*, 643 F. App'x 97, 101 (3d Cir. 2016) (holding that plaintiff lacked standing to challenge validity of mortgage assignment based on pooling services agreement); *see also Quinn v. Wells Fargo Bank, N.A.*, No. CV 16-6967-CCC-MF, 2017 WL 3671246, at *2 (D.N.J. Aug. 25, 2017) ("Plaintiffs lack standing to challenge the mortgage assignment, because Plaintiffs were neither parties to nor intended third-party beneficiaries of the pool service agreement or assignments.").

By failing to allege an "invasion of a legally protected interest," Plaintiff has also failed to demonstrate any actual or imminent injury-in-fact. *Lujan*, 504 U.S. at 560. Plaintiff admits that he took out the loan and that he is in default. He does not allege that he ever paid more than the amount due on his loan; that he ever received a bill or demand from any entity other than Defendant; or that the allegedly improper transfer ever interfered with his ability to pay on the loan. There is likewise no allegation suggesting that Plaintiff ever sought out or attempted to pay a prior assignee or servicer. The allegations in the Amended Complaint—together with the plethora of documents attached thereto—all seem to confirm that Plaintiff's original debt

obligations under the note remain completely unchanged, and that one creditor has merely been substituted for another.

"[Plaintiff] has an obligation to pay his loan on schedule, and to surrender his house in the event of an uncured default. His interest is in not being required to pay the same claim twice. Because he makes no allegation of any invasion of that interest, he has not suffered an injury." *Bauer*, 618 F. App'x at 149 As such, the Court holds that Plaintiff does not have standing to assert his claims.

### B.  Failure to State a Claim

Notwithstanding Plaintiff's inability to assert his claims, the allegations in the Amended Complaint are either factually inconsistent, legally misguided, or contradicted by the very documents he has attached to it. This is to say that even if Plaintiff had standing to pursue his causes of action, they would nevertheless fail to state a claim upon which relief could be granted.

First, the Amended Complaint appears to principally take issue with Defendant having identified Towd Point as his current lender during its attempts to collect payment. Specifically, he points out that at the time he defaulted on his loan in 2023, Towd Point's assignment had not yet been recorded with the GCCO. He thus reasons that because the "legal owner of the mortgage on record" at the time was the prior mortgage assignee, FirstKey Mortgage, LLC ("FirstKey"), Defendant's identification of Towd Point as his current lender was, at the very least, false or misleading. Am. Compl ¶ 18. Plaintiff is mistaken.

Under New Jersey law, standing to enforce a mortgage debt obligation is conferred on an assignee through "either possession of the note or an assignment of the mortgage that predated [an] original [foreclosure] complaint." *Deutsche Bank Tr. Co. Americas v. Angeles*, 53 A.3d 673, 675 (N.J. Super. Ct. App. Div. 2012). An assignment need not be recorded to be effective, but

simply must be "executed in recordable form" prior to the filing of a foreclose complaint. *Wells Fargo Bank, N.A. v. Amico*, No. A-0881-13T4, 2015 WL 5837453, at *6 (N.J. Super. Ct. App. Div. Sept. 30, 2015). In other words, "[t]he fact that assignments of mortgages may be recorded does not affect the validity of an assignment of a mortgage which has not been recorded." *EMC Mortg. Corp. v. Chaudhri*, 946 A.2d 578, 588 (N.J. Super. Ct. App. Div. 2008). The purpose of recording an assignment is to protect the creditor in the event that a later purchaser obtains the property without notice of the mortgage. It does not, as Plaintiff suggests, have any bearing on the validity of the assignment itself, or otherwise portend fraud.

In his Opposition, Plaintiff appears to recognize that the recording of the assignment has no bearing on Defendant's or Towd Point's authority to enforce his debt obligations. Still unsatisfied, Plaintiff insists that Towd Point is not physically in possession of the original promissory note and that, without seeing the PSA or MLS, "there is no evidence that [Towd Point] is the legal owner [of the note] with rights to the [mortgage]." (ECF No. 37 at 9.) Neither of these statements are true. Again, a mortgagee's authority to foreclose on a property is evinced through "**either** possession of the note **or** an assignment of the mortgage." *Angeles*, 53 A.3d at 675 (emphasis added). That the recorded mortgage assignment is attached to the Amended Complaint means that the note, the PSA, and the MLS are simply irrelevant to these allegations.[3]

Lastly, Plaintiff claims that Defendant lacks agency authority to act on Towd Point's behalf. Yet, that very allegation is contradicted by the Amended Complaint, namely a copy of a

---

[3] In part of his Opposition, Plaintiff actually denies seeking to challenge Defendant's or Towd Point's authority based on the PSA and MLS, clarifying that he is "simply requesting to see [them]." (ECF No. 37 at 19.). That, however, is even more reason to dismiss the Amended Complaint. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016) (observing a plaintiff's burden to allege sufficient facts raising a "reasonable expectation" that discovery will "uncover proof of [his] claims").

September 7, 2022 Limited Power of Attorney ("POA") executed by USBNA in favor of Defendant. (ECF No. 21-11.) In the first paragraph of the POA, USBNA authorizes Defendant to

> [d]emand, sue for, recover, collect and receive each and every sum of money, debt, account and interest . . . belonging to or claimed by the Trustee [*i.e.*, USBNA], and to use or take any lawful means for recove4ry by legal process or otherwise, including but not limited to . . . the preparation and issuance of statements of breach, notices of default . . . foreclosing on the properties under the Security Instruments by judicial or non-judicial foreclosure . . . as may be necessary or advisable in any . . . state or federal suit or any other action.

(*Id.* at 2.) Among the entities listed in Schedule A of the POA is Towd Point. (*Id.* at 7.) The POA was recorded with the Davis County Clerk's Office in Utah. (*Id.* at 2.)

Apparently recognizing Defendant's authority to act on Town Point's behalf, Plaintiff nonetheless insists that there is still a "problem" because Defendant has been collecting loan payments from him since October 2019 (*i.e.*, approximately three years before USBNA executed the POA). Frankly, the Court does not see any problem, particularly given that Plaintiff has long known of Defendant's servicing rights to his loan. Also attached to the Amended Complaint is a Notice of Service Transfer ("NST") dated October 23, 2019, wherein Defendant advised Plaintiff that it would be the new servicer of his mortgage loan. It stated, in relevant part, as follows:

> You are hereby notified that the servicing of your mortgage account, that is, the right to collect payments from you, is being assigned, sold or transferred . . . to Select Portfolio Servicing, Inc., effective 10/31/2019. The assignment, sale or transfer of the servicing of the mortgage does not affect any term or condition of the mortgage instrument, other than the terms directly related to the servicing of your mortgage account.

(ECF No. 21-12 at 4.) The NST further provided Plaintiff with detailed instructions to submit a "Notice of Error/Information Request" in the event he wished to send a written inquiry or dispute any information contained therein. (*Id.* at 3–4.) Plaintiff does not allege that he ever took issue with Defendant's agency prior to his default. Nor does he deny making his regularly scheduled loan payments over the four years leading up to his default. Far from plausibly alleging that

Defendant has been acting as some rogue, unauthorized loan servicer, the Amended Complaint more readily demonstrates that Defendant had every right to collect payments from him.

In closing, the Amended Complaint does not plausibly allege that Defendant has made any false or misleading statement at all, much less one on which Plaintiff has detrimentally relied. And while Plaintiff alleges there are conflicting claims concerning the ownership of his note and the assignment of his mortgage, it appears that the only "conflict" present in this case is the one that Plaintiff attempts to create. Plaintiff has not alleged the existence of any other mortgagee, noteholder, or loan servicer standing on the sidelines with an outstretched hand. Nor has he alleged that he has attempted to send any mortgage payments that he owes to some other entity; that he was confused about how to cure his default; or that he risked (or feared that he risked) the prospect of having to satisfy the same debt to multiple parties. *See Dixon v. Stern & Eisenburg, PC*, 652 F. App'x 128, 132 (3d Cir. 2016) (holding that loan servicer's pre-recording identification of noteholder did not violate the FDCPA); *English*, 2017 WL 1084515, at *4 (finding plaintiff's fraud claims failed in the alternative for not alleging detrimental reliance on a mortgagor's purported misrepresentation). Thus, to the extent Plaintiff seeks to proceed on a basis not involving the validity of the underlying assignment, he has failed to state a claim upon which relief can be granted.

C. **Leave to Amend**

Having determined that dismissal of the Amended Complaint is warranted, the Court next considers whether Plaintiff should be afforded further leave to amend. While leave to amend is generally given, the Court may deny leave to replead where amendment "would not cure the deficiency." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Having carefully reviewed Plaintiff's Amended Complaint; the documents attached thereto; and the arguments Plaintiff has

articulated in his Opposition to Defendant's Motion; the Court is convinced that any further amendment would be futile. As such, it denies Plaintiff leave to submit an amended pleading.

V.  CONCLUSION

For the reasons set forth above, the Court grants Defendant's Motion and dismisses the Amended Complaint. In the event that Defendant seeks to later foreclose on the property, this Opinion does preclude Plaintiff from raising the issues raised in this action or otherwise assert new claims based on these facts. *See English*, 2017 WL 1084515, at *4 (observing that New Jersey is a foreclosure state, meaning that a mortgagor may challenge a mortgagee's standing to foreclose).

Date: December 30, 2024

                                                                          KAREN M. WILLIAMS
                                                                          U.S. DISTRICT COURT JUDGE